UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1-21-cr-160-5 (TJK) |
| | : | |
| WILLIAM CHRESTMAN | : | |
| | : | |
| _____ | : | |

**DEFENDANT'S MOTION TO RECONSIDER DETENTION**

William Chrestman, through undersigned counsel, pursuant to the Federal Rules of Criminal Procedure, and 18 U.S.C. §3145, respectfully requests this Honourable Court review the order of detention imposed by the Hon Beryl Howell, Chief Judge for the District Court for the District of Columbia, on 23 February 2021, and release him in this matter. A hearing is requested. In support of this request, Mr Chrestman states the following:

Mr Chrestman is before the court charged with one count each of: Conspiracy, in violation of 18 U.S.C. §371; Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§1512(c)(2); Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting in violation of 18 U.S.C. §§231(a)(3), 2; Threatening a Federal Officer in violation of 18 U.S.C. §§115(a)(1)(B); Entering and Remaining in a Restricted Building or Grounds and Carrying a Deadly or Dangerous Weapon in violation of 18 U.S.C. §1752 (a)(1) and (b)(1)(A); and Entering and Remaining in a Restricted Building or Grounds and Carrying a Deadly or Dangerous Weapon in violation of 18 U.S.C. 1752(a)(2) and (b)(1)(A). A status hearing is scheduled for 24 June 2021.

Mr Chrestman was arrested and presented on 17 February 2021 in the District for the District of Kansas. Mr Chrestman was represented by local counsel, and a detention hearing was held. Pursuant to that hearing Mr Chrestman was ordered released. The government

appealed that decision. A detention hearing was held before Hon Chief Judge Beryl A Howell on 23 February, 2021. Based on that hearing, the government's motion to detain Mr Chrestman was granted and he was ordered detained pending trial. Mr Chrestman was arraigned before this Honourable Court on 24 March 2021. The arraignment was undersigned counsel's first meaningful appearance before any court on Mr Chrestman's behalf. This motion thus represents undersigned counsel's first written pleading concerning his detention.

Mr Chrestman asserts the government cannot satisfiy the requirements contemplated by 18 U.S.C. §3142, and as such should be released in this matter.

**ARGUMENT**

As an initial matter, while the Rules of Criminal Procedure do not explicitly provide for motions to reconsider, such motions are properly entertained in criminal cases. *See, e.g., U.S. v Sunia*, 643 F. Supp 2d 51, 60 (D.D.C. 2009), *U.S. v Slough*, No. CR 08-360 (RCL), 2014 WL 3734139, *2 (D.D.C. July 29, 2014), *U.S. v Cabrera*, 699 F. Supp. 35, 40 (D. D.C. 2010). In deciding motions for reconsideration in criminal cases, the courts apply the same standard applicable in civil cases under F. R. Civ. P 59(e). *U.S. v Sunia*, 643 F. Supp 2d at 60 and *U.S. v Slough*, 2014 WL 3734139 at *2, and look at whether justice requires reconsideration. As the Court articulated in *Slough* at *2, "asking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances," citing *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). "Moreover, "[e]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Sunia* at 61, citing *Isse v American Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008). Furthermore, in the context of the Bail Reform Act, it is sufficient to show that there is "information that was not known to the movant at the time of the hearing and that has a material

bearing" on the detention question. United States v. Lee, *451 F. Supp. 3d 1, 5 (D.D.C. 2020)*. The existence of information concerning Mr Chrestman's medical conditions and personal circumstances certainly meets that standard. Here, reconsideration is appropriate and in the interests of justice as Mr Chrestman's liberty interests remain at stake, and the facts known to the parties and thus the Court have changed, undercutting the arguments made by the government for his detention.

The Bail Reform Act requires the courts to release defendants pending trial on personal recognizance or on an unsecured appearance bond unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or… the safety of any other person or the community." 18 U.S.C. §§3142(b), 3142(f)(2)(B). The, "the default position of the law… is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Sipp. 3d 55, 62 (D.D.C. 2018)(quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). Upon Imposition of a condition, or combination or conditions, the court must select the "least restrictive" conditions. 18 U.S.C. §3142 (c)(1)(B).

The pretrial detention question, pursuant to 18 U.S.C. § 3142 (g), itemizes four factors to be considered by the court: (1) the nature and circumstances of the offense charged, (2) the weight of evidence against the defendant, (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. Mr Chrestman addresses these individually.

1.  <u>Nature and Circumstances of the Charged Offenses.</u>

Mr Chrestman concedes that the type of offences alleged here, in and of themselves, may give the Court pause to consider the safety of the community. However, it is axiomatic that the detention statute does not contemplate detention based purely on the nature of charge

alone: were that the case, there would be no need for any other consideration once this particular concern has been met. Indeed, the very question contemplates the nature *and circumstances*, and an inquiry into circumstances here leads to the conclusion of release. Mr Chrestman also points out to the court that he, like any other defendant, irrespective of having been indicted, is presumed innocent. To hold him purely based on the nature of the charge would seriously undermine her presumption of innocence. The Court must go further and assess the nature of the charge in light of the other concerns.

Mr Chrestman asserts that considering the nature and circumstances of the charge implicitly contemplates the nature and circumstances specifically in reference to him. In this case there are several individuals charged as co-defendants. It is inarguable that Mr Chrestman's co-defendants have significantly more involvement in the events of 6 January leading to these allegations. In its Motion for Emergency Stay and Review of Release Order filed 20 February 2021, the government spent large portions of its argument outlining the actions undertaken by the co-defendants in this matter without establishing an appropriate nexus between Mr Chrestman and those individuals. The discussion relating to Mr Chrestman essentially rests on two arguments. Firstly, Mr Chrestman is seen talking to individuals alleged to be members of Proud Boys. Secondly, Mr Chrestman is seen to be in the vicinity of individuals alleged to be members of Proud Boys. However, in the materials already submitted by the government, and in materials provided to the defence in discovery, it is strikingly obvious there is no evidence that Mr Chrestman plays any role in any concerted operation alleged to have been occurring that day. There are no discussions of, nor is there any basis to believe or evidence suggesting that Mr Chrestman was in Washington DC or in the vicinity of Capitol Hill in any kind of "official" capacity for any of the discussed protest groups or that he was performing any operational role. The nature and circumstances showing Mr Chrestman's

relative lack of involvement in the central activities of any conspiracy undermines the government's claim for necessary detention under this prong of analysis.

2.   Weight of Evidence.

The government's memorandum is short and to the point when discussing the weight of the evidence. The fact that there are numerous photographs/videos depicting William Chrestman in the vicinity of Capitol Hill and being involved in a protest on 6 January 2021 is noted. However, being in the vicinity, and being involved in a protest event, by itself, does not create a *prima facie* case supporting the charges brought here when viewed in the context of the Bail Reform Act. In fact, the evidence here is much more aligned with the concept of circumstantial rather than direct. In any event, in determining whether conditions of release can ensure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *accord United States v. Jones*, 566 F. Supp. 2d 288, 292 (D.NY 2008). The weight of the evidence against the accused is another factor to be considered at the detention hearing, *United States v. Apker*, 964 F.2d 742 (8th Cir. 1992), but it is the least significant factor, *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990). In the words of one district court judge, to presume risk of flight from strong "evidence" of guilt would be "tantamount to a presumption of guilt." *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987). Again, Mr Chrestman would draw the Court's attention to the lack of any evidence showing Mr Chrestman took an official, organising, or active role in furthering any common scheme or plan of the collective.

3.   Defendant's History and Characteristics.

"[A] defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Pope v. United States*, 739 A.2d 819, 827 (D.C.App. 1999) (quoting *Cruz-Foster v. Foster*, 597 A.2d 927, 930 (D.C.1991)). William Chrestman has no criminal history whatsoever. There is nothing in Mr Chrestman's background and personal characteristics which form the basis of a legitimate argument for risk of flight. Since the hearing of 23 February 2021 in which the Order releasing Mr Chrestman was vacated, several relevant factors to the concerns of Mr Chrestman's history and characteristics had come to light which had the court at the time been aware have a reasonable likelihood of providing for a different outcome.

Firstly, Mr Chrestman's medical conditions. Mr Chrestman was employed as a sheet metal worker upon his honorable discharge form the U.S. Army. However, in 2010, he was injured in a workplace accident which resulted in long-term chronic backpain. Surgery took place to remedy but Mr Chrestman still suffers with pain. For this ongoing condition, Mr Chrestman is/has been prescribed Hydrocodone, Oxycontin, Tramodol (as an opioid alternative), Carisprodol, and Meloxicam. Naturally, given the nature of these medications, Mr Chrestman is not receiving the appropriate regimen of medications during this period of incarceration. For this condition, Mr Chrestman was receiving treatment through the Veterans' Administration (VA). He was also receiving disability through the VA.

In addition to his physical issues, Mr Chrestman was also receiving treatment for mental health conditions including Attention-Deficit Hyperactivity Disorder (ADHD), Major Depressive Disorder, and Insomnia. His prescription is Adderall and Tradazone. Again, these are conditions that are going untreated at present.

As noted above, Mr Chrestman was receiving disability and treated by the Veterans' Administration. His current detention status places him in danger of losing those significant benefits.

In addition to his health concerns, William Chrestman has other personal matters which have strong bearing on the issue of pre-trial detention in this matter. As already argued by previous counsel, Mr Chrestman has long-standing ties to his community. We will not belabor the Court with a recitation of arguments already made. However, at this time, the residence Mr Chrestman shares with his common-law partner, Ms Linette Gray, and their six children is in danger of foreclosure placing the whole nuclear family in jeopardy of homelessness.

We submit, had the court on 23 February 2021 been aware of these issues, it is reasonable to perceive that the calculus of Mr Chrestman's characteristics when view in the light of the Bail Reform Act constructs would have differed in his favor.

4.  <u>The nature and seriousness of the danger to any person or the community.</u>

The Government bears the ultimate burden of establishing that no series of conditions is sufficient to negate the risk of the accused's flight or dangerousness—by a preponderance of the evidence in the case of flight and by clear and convincing evidence in the case of dangerousness. *United States v. English,* 929 F.3d 311, 319 (2d Cir. 2011); *see also Stone*, 608 F.3d at 946; *United States v. Bell*, 209 F. Supp. 3d 275, 277 (D.D.C. 2016) (*citing, United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)); *United States v. Rodriguez*, 147 F. Supp. 3d 1278, 1286 (D. N.Mex. 2015); *United States v. Guerra-Hernandez*, 88 F. Supp. 3d 25, 26 (D.P.R. 2015). Clear and convincing evidence means proof that the defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger. *United States v. Patriarca,* 948 F.2d 789 (1st Cir. 1991). Only when there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *Ploof*, 851 F.2d 7. *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988). Not only must the Court find a strong probability that a person will commit additional crimes if released, but the Court must also find and identify

an articulable threat posed by the defendant to an individual or the community. *United States v Munchel,* No. 21-3010 (D.C. Cir. 2021).

As discussed above, Mr Chrestman has no criminal history and, as will be outlined below, enjoys significant ties to his community. Any argument that the fourth §3142 factor for consideration, danger to the community, would form a basis for the detention of Mr Chrestman then merely repeats the initial assertion that it is the nature of the allegations here that presents to the court a continuing risk of danger to persons and the community. As addressed above, upon closer examination, the evidence against him may indicate his presence in the vicinity of the events of 6 January but shows a remarkable absence of any evidence alleging an active conspiratorial role in the events that took place that day. Troubling as those events may be, the Court is presented with an individual who appears on the government's filing occupying a peripheral position[1]. Furthermore, with respect to future conduct or ability to conform with the conditions of pretrial release, there is no articulable threat identified by the government to form the basis of a danger to the community argument. The question of thus cannot rise to the level of concern contemplated by the statute, and the court should decline to find a reliant basis for detention.

As we noted earlier, previous counsel highlighted Mr Chrestman's considerable ties to his community constituting someone the Court should not be concerned with as a flight risk. Moreover, the initial ruling from the Magistrate Judge in Kansas was based on such. However, the new information regarding Mr Chrestman's housing situation and health concerns place him in a far greater light with respect to ties to his community. It should now be seen not just as someone with *ties to* but is now *dependent* upon that community.

**CONDITIONS OR COMBINATION OF CONDITIONS**

---

[1] The government has alleged Mr Chrestman has ties to the group Proud Boys. At this juncture, Mr Chrestman has renounced any association with this group or its goals.

### THAT WOULD ENSURE THE DEFENDANT'S COMPLIANCE WITH COURT-ORDERED RELEASE CONDITIONS.

The law is very clear. The presumption here is that the defendant will be released pending trial unless the government can prove by clear and convincing evidence that pretrial detention is the *only* means by which the community's safety can be assured, 18 U.S.C. § 3142(f)(2)(B); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996), or can prove by a preponderance of the evidence that no conditions of release can assure the defendant's appearance at future court hearings. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988); *United States v. Hassanshahi*, 989 F. Supp. 2d 110 (D.D.C. 2013). Even if the Court determines that personal recognizance or an unsecured bond will not reasonably assure appearance or will endanger any other person or the community, 18 U.S.C. §3142(c) still mandates release ("shall order the pretrial release") subject to certain specified conditions. The conditions, which must include that the person shall not violate any federal, state or local law, must be the least restrictive conditions necessary to reasonably assure the person's appearance and the community's safety. The provision that conditions "reasonably assure" appearance and safety does not require a guarantee of appearance or safety. *See United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990)*; United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), *cert. denied*, 479 U.S. 950 (1986). It requires an "objectively reasonable" assurance of community safety and the defendant's appearance at trial. *Id.* Imposition of conditions of release must be supported by reasons why they are necessary to reasonably assure appearance or safety. *United States v. Spilotro*, 786 F.2d 808 (8th Cir. 1986).

The court has many options here to create conditions or a combination of conditions that would satisfy compliance. It should be noted that we are not as such requesting the Court place William Chrestman purely on personal recognizance. We are realistic enough to realize there are many factors the Court must be concerned with and appreciate the manner in which

the events of 6 January transpired and has formed the debate. However, we are confident the Court can form a release plan involving some form of monitoring such that Mr Chrestman is able to address his pressing personal/health concerns at the same time as allowing his actions to be monitored appropriately. When viewing all that has been discussed prior, and the additional matters here, William Chrestman presents as an extremely good candidate to the Court for pretrial release consideration: one that the Court can feel confident in creating conditions of release.

WHEREFORE, for the reasons addressed above or at a hearing held on this matter, William Chrestman requests that this court in reviewing a previous detention order, deny the government's request for pretrial detention in this matter, and release Mr Chrestman with whatever conditions of release the Court deems appropriate.

Respectfully Submitted,

/s/ *Peter A. Cooper*

Peter A. Cooper,
Bar No. 478-082
Counsel for William Chrestman
400 Fifth Street, NW
Washington DC 20001
(202) 400.1434
pcooper@petercooperlaw.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing Motion to Reconsider Detention is being filed via the Electronic Court Filing System (ECF), causing a copy to be served upon government counsel of record, and by email, this 26th day of May, 2021.

                                                 /s/ *Peter A. Cooper*
                                                 Peter A. Cooper